United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 17, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60324

Summary Calendar

_____

FRIEDE GOLDMAN OFFSHORE; ZURICH AMERICAN INSURANCE COMPANY

Petitioners

v.

DAVID CHANDLER; DIRECTOR, OFFICE OF WORKER'S COMPENSATION
PROGRAMS, U.S. DEPARTMENT OF LABOR

Respondents

_____

Petition for Review:
Benefits Review Board
No. 04-551

_____

Before KING, WIENER, and DEMOSS, Circuit Judges.

PER CURIAM:[*]

Petitioners Friede Goldman Offshore and Zurich American

Insurance Company seek review of an administrative action.  For

the reasons provided below, this petition for review is DENIED.

## I.  BACKGROUND

---

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Respondent David Chandler ("Chandler") was employed by petitioner Friede Goldman Offshore ("Friede Goldman") as a welder at Friede Goldman's shipyard at Port Bienville, Mississippi. On October 15, 2001, during the course of his employment, Chandler fell from a collapsing scaffold. After losing consciousness, Chandler was immediately treated for a closed head injury and trauma to his back, hip, and knee. Over the next few months, Chandler was referred to various orthopedists. He returned to light duty work with Friede Goldman on October 28, 2001, and he continued to work in Friede Goldman's tool room and electrical shop without loss of pay until April 25, 2002, when Friede Goldman closed its facilities.

In November 2001, Dr. R.A. Graham ("Graham") discovered that Chandler had torn his meniscus. He recommended surgery, and he provided Friede Goldman's safety administrator with a work release for Chandler. In December 2001, Dr. Charles Winters ("Winters") confirmed Chandler's meniscal tear and determined that Chandler also suffered from a herniated disc. Winters performed arthroscopic surgery on Chandler's knee on January 7, 2002, and he recommended lumbar epidural steroid injections for his back condition on January 30, 2002. At his administrative hearing, Chandler testified that Winters's surgery was unsuccessful in relieving the pain in his knee. Although Friede Goldman refused to authorize medical payments, Chandler continued

to seek further treatment for both his knee and back pain.[1]  On April 15, 2003, Dr. Joe Jackson ("Jackson") determined that Chandler's chronic back pain and intermittent leg pain were both attributable to his injured disc.

After Friede Goldman's facilities closed, Chandler was hired by Tanco Engineers ("Tanco") as a welder.  Chandler worked for Tanco until November 30, 2002, when his continuing back pain forced him to quit.  On November 11 and 26, 2002, just before he quit his job at Tanco, Chandler received steroid injections from Dr. Thomas Trieu ("Trieu") in both his knee and his back in an unsuccessful attempt to arrest the progressive deterioration of his condition.  After quitting his job at Tanco, Chandler took up a less physically demanding position as a part-time helper with R.A. Braun Construction, but his condition failed to improve.  On April 3, 2003, Jackson told Chandler that he would need to be retrained because his back injury would never permit him to resume his career as a welder.

As a result of his injuries, Chandler filed a claim for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq., against Friede Goldman and its insurer Zurich American Insurance Company.  This claim was referred to the Department of Labor's Office of Administrative

---

[1]  Friede Goldman approved Graham's initial evaluation, but withdrew its authorization for Winters's surgery on January 6, 2002.

3

Law Judges for a formal hearing, which was held on September 12, 2003, in Metairie, Louisiana.

At the formal hearing, Friede Goldman argued that Chandler had failed to file a timely claim as required by section 13 of the LHWCA ("section 13"), 33 U.S.C. § 913. Section 13 states that

> the right to compensation for disability or death under this chapter shall be barred unless a claim therefore is filed within one year after the injury or death. . . . The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

33 U.S.C. § 913(a) (2000). Friede Goldman contended that Chandler failed to file a written claim valid under the LHWCA's filing requirements prior to November 18, 2002, when Chandler's attorney wrote a letter to a claims adjuster requesting an informal conference. On the other hand, Friede Goldman argued that Chandler knew or should have known the extent of his disabling injury and its impact on his future employment on November 6, 2001, when Dr. Graham recommended surgery, over a year before the earliest valid filing date. Therefore, Friede Goldman argued that Chandler's right to compensation was time-barred by section 13.

In response, Chandler argued that his claim was timely filed on October 17, 2001, over a year before Friede Goldman's date, when one of his earliest doctor's bills was provided to a claims

4

adjuster and filed with the Department of Labor. In addition, Chandler also argued that he did not become aware of the full extent of his injury and its relation to his future employment until November 30, 2002, when his back pain forced him to quit welding for Tanco; therefore, even if his claim was not properly filed until November 2002, it remained timely because he lacked the requisite awareness of his injury until that time.

On March 5, 2004, the administrative law judge ("ALJ") issued his decision granting Chandler the benefits sought in his claim. In this decision, the ALJ accepted Chandler's first argument and found that the medical bill Chandler's attorney provided to the claims adjuster and filed with the Department of Labor on October 17, 2001, constituted a claim for medical treatment valid for the timeliness purposes of section 13. After reviewing Chandler's medical records and his work history, the ALJ also credited Chandler's testimony that he did not become aware of the full extent of his injury and his related loss of earning potential until November 30, 2002. As a result, the ALJ found that even if the October 2001 medical bills did not constitute a valid filing, Chandler's later claim was timely and fell within section 13's one-year limit. Accordingly, the ALJ granted Chandler's claims for disability and medical compensation.

Friede Goldman appealed to the Department of Labor's Benefits Review Board ("BRB"), challenging the ALJ's finding that

5

Chandler's claim was timely filed, as well as the ALJ's average weekly wage and post-injury wage-earning determinations. On March 22, 2005, the BRB filed its per curiam decision, affirming the ALJ's decision. More specifically, the BRB affirmed the ALJ's determination that Chandler was not aware of the full extent of his injury until November 30, 2002, when his continuing back pain forced him to quit working for Tanco. Therefore, the BRB also affirmed the ALJ's finding that the claim for compensation Chandler filed was timely because it was filed within one year of the date Chandler became aware of the full extent of his injury. The BRB also affirmed the ALJ's average weekly wage and post-injury wage-earning determinations.[2]

## II.  DISCUSSION

This court has jurisdiction over this petition for review pursuant to 33 U.S.C. § 921(c). We review the decisions of the BRB for errors of law and to determine whether the BRB correctly concluded that the ALJ's order "was supported by substantial evidence on the record as a whole and is in accordance with the law." Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs, 991 F.2d 163, 165 (5th Cir. 1993) (quoting Avondale Indus. v. Dir., Office of Workers' Comp. Programs, 977 F.2d 186, 189 (5th Cir. 1992)). The sole issue presented by this

---

[2]  In their petition for review with this court, the petitioners do not challenge these administrative wage and wage-earning determinations, focusing solely upon the administrative finding that Chandler's claim was timely.

petition for review is whether the BRB erred in affirming the ALJ's determination that Chandler's claim for compensation benefits was timely filed.

The timeliness of a claim is presumed under the LHWCA, and the burden to show that a claim was not filed rests on employers such as Friede Goldman. 33 U.S.C. § 912(b)(2) (2000); Avondale Shipyards Inc. v. Vinson, 623 F.2d 1117, 1119-21 (5th Cir. 1981). For the statute's one-year limitation to run against a claimant such as Chandler, "he must know (or should know) the true nature of his condition, i.e., that it interferes with his employment by impairing his capacity to work, and its causal connection with his employment." Marathon Oil Co. v. Lunsford, 733 F.2d 1139, 1141 (5th Cir. 1984).

In their briefs before this court, the petitioners argue that because Chandler had sustained previous injuries and had completed two years of college, he should reasonably have expected some loss of wage-earning capacity after his initial consultation with Dr. Graham in November 2001. We disagree. The ALJ rationally determined, after carefully examining Chandler's work history and medical records, that Chandler did not become aware of the full extent of his injuries until November 2002. As the BRB correctly concluded, this finding fully accords with the text of the LHWCA and the prior holdings of this court. See, e.g., Lunsford, 733 F.2d at 1141 (refusing to apply the LHWCA

7

statute of limitations, even though the clamaint took three weeks of leave after the initial injury, because the initial injury was not seen as having any significant effect upon his future earning capacity).  This finding is also supported by substantial evidence in the record, including, but not limited to, the depositions of Trieu and Winters.  Contrary to petitioners' suggestions, we see no reason to conclude that either Chandler's medical history or his educational background afforded him special insights that should have superseded the advice and diagnoses of his physicians.

## III.  CONCLUSION

For the reasons stated above, the petition for review is DENIED.